UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>RICHARDO ELLERBE,<br><br>Defendant. | MAGISTRATE NO. 24-MJ-93 |

**GOVERNMENT'S MEMORANDUM IN SUPPORT OF PRETRIAL DETENTION**

Defendant Richardo Ellerbe should be detained pending trial under 18 U.S.C. § 3142(f)(1)(E) (felony involving a firearm). The defendant, a convicted felon, is charged in an indictment with one count of unlawful possession of a firearm in violation of 18 U.S.C. § 922(g)(1). The defendant poses a clear risk to community safety and should be detained pending trial. The defendant's dangerousness is apparent through his actions in this case and his history, including his prior convictions, behavior on release, and repeated contacts with the criminal justice system. The instant case represents the defendant's fifteenth arrest and fourth arrest involving a firearm.

At the time of his arrest in this case, the defendant was on supervised release in D.C. Superior Court case number 2017-CF1-0559, where he was convicted of assault with intent to kill (AWIK) and unlawful possession of a firearm (prior conviction). In that case, the defendant took out a firearm and shot at two innocent civilians without any provocation on August 6, 2016. While one of the individuals escaped unscathed, the other individual suffered eight gunshot wounds, including to his groin, buttocks, and thigh. The victim required multiple surgeries and months of recovery. The defendant's term of supervised release in that case expires on December 15, 2026. And, as discussed below, with nearly two years left in his term of supervision for AWIK and

unlawful possession of a firearm, the defendant (1) escaped from a halfway house where he was court-ordered to be as a requirement of his supervision; (2) was found in possession of yet another firearm; and (3) was driving a recently stolen vehicle that contained a scale and a white rock substance that field tested positive for crack cocaine. The defendant should be detained pending trial.

## FACTUAL BACKGROUND

On March 3, 2024, at around 4:00 p.m., members of the Metropolitan Police Department (MPD) operating in a marked scout car wearing full uniform were travelling eastbound in the 1200 block of Alabama Avenue Southeast, Washington, D.C. While driving, Officer Czerwinski observed a black Kia sedan with Maryland Tag #3FH1185 affixed to the vehicle's rear bumper. A WALES/NCIC search revealed that the vehicle was stolen from Prince George's County, M.D. on February 28, 2024. Officer Czerwinski then made a U-turn and located the black Kia sedan at a gas station on 3011 Martin Luther King Avenue S.E, as seen below.



Officers approached the black Kia sedan and asked the passengers to step out of the vehicle. Specifically, at 15:58:01, Officer Czerwinski can be heard ordering the defendant, Richardo

Ellerbe, out of the vehicle and Officer Britt can be heard telling the front passenger, Khalil Sharpe, to exit the vehicle.

As Officer Czerwinski attempted to place defendant Ellerbe in handcuffs, defendant Ellerbe began resisting arrest by pulling his body and arms away from Officer Czerwinski, as seen below. During this struggle, Officer Czerwinski can be heard at 15:58:09 telling defendant Ellerbe repeatedly "hands behind your back" and "stop." Defendant Ellerbe did not comply with Officer Czerwinski's orders. Instead, he continued pulling his body and arms away from Officer Czerwinski. As a result, Officer Smith and Sergeant Barr assisted Officer Czerwinski in attempting to physically detain defendant Ellerbe.

As defendant Ellerbe refused to comply with law enforcement, Officer Smith operated his O.C. spray to subdue defendant Ellerbe.[1] Both Officer Smith and defendant Ellerbe were exposed to the O.C. spray and reacted in pain. It took officers approximately 30 seconds to handcuff defendant Ellerbe from the moment they arrived on scene. At the same time, Khalil Sharpe also began pulling his arms and body away from Officer Britt to avoid police custody. It took officers approximately one minute and 15 seconds to handcuff Khalil Sharpe from the moment they arrived on scene.[2]

From defendant Ellerbe's person, officers recovered a gray satchel bag that was buckled around his body. Inside the gray satchel bag was a black and brown .22 caliber revolver with serial number L782479, which can be seen below. The firearm had a capacity for 6 rounds and no ammunition inside of it at the time it was recovered. MPD officers conducted a CRS gun query

---

[1] Defendant Ellerbe was treated by a physician following his arrest. He had a cast on his right ankle which he claims was broken two days prior.
[2] Khalil Sharpe was initially charged in Superior Court in 2024CF2002168 with Unauthorized Use of a Vehicle. At a preliminary hearing on March 7, 2024, the magistrate court found there was not probable cause as to Mr. Sharpe and dismissed the case.

which revealed that defendant Ellerbe did not have a license to carry a pistol in the District of Columbia nor was the recovered pistol registered in the District of Columbia. There are no firearm or ammunition manufacturers in the District of Columbia. Therefore, the recovered firearm would have travelled in interstate commerce prior to being recovered from the defendant in the District of Columbia.



Inside the black Kia sedan, officers recovered a clear plastic bag containing a white rock substance along with a digital scale from the front passenger side door frame, near where Khalil Sharpe was sitting. The white rock substance, seen below, field tested positive for crack cocaine.



Also located in the vehicle were three open containers containing suspected alcoholic beverages. Two of these containers were in the car's center console and one of them was found on the driver's side floor. Inside the center console, officers located a loose ignition and observed the steering column was missing an ignition, as seen below.



A criminal history search of defendant Ellerbe revealed the existence of a full extradition warrant for Aggravated Assault with a Weapon from Arlington, V.A. in reference to Warrant Number 241610300048A. Moreover, at the time of his arrest, the defendant was on supervised

5

release in case number 2017-CF1-0559. In that case, the defendant was convicted for Assault with Intent to Kill and Unlawful Possession of a Firearm (Prior Conviction). As a result, the defendant has a previous conviction punishable by more than one year of incarceration. Accordingly, defendant Ellerbe was not permitted to possess a firearm on March 3, 2024.

## PROCEDURAL HISTORY

On March 3, 2024, defendant Ellerbe was charged in the Superior Court of the District of Columbia, in case number 2024-CF2-2085, with one count of unlawful possession of a firearm (prior conviction) and one count of unauthorized use of a vehicle. On March 6, 2024, the defendant was charged via Complaint in U.S. District Court with one count of violating 18 U.S.C. § 922(g). The defendant's Superior Court case was dismissed the next day, on March 7, 2024. On that day, the defendant had his initial appearance before the Honorable Judge Robin M. Meriweather. The defendant was ordered held without bond pending a detention hearing to be held on March 13, 2024.

## LEGAL STANDARD

Under the Bail Reform Act, if the Court determines that "no condition or combination of conditions . . . will reasonably assure the appearance of [a defendant] as required and the safety of any other person and the community," the Court shall order a defendant held pending trial. 18 U.S.C. § 3142(e). For purposes of making a determination regarding detention, "a grand jury indictment, by itself, establishes probable cause to believe that a defendant committed the crime with which he is charged." *United States v. Taylor*, 289 F. Supp. 3d 55, 62–63 (D.D.C. 2018) (internal quotations omitted).

In determining whether any condition or combinations of conditions will assure the safety of the community, in light of any applicable presumptions, the Court weighs four factors: (1) the

nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) his history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by his release. *See* 18 U.S.C. § 3142(g).

In making this determination, the "rules concerning the admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the [detention] hearing." 18 U.S.C. § 3142(f). Specifically, the presentation of hearsay evidence is permitted, and the government may proceed by proffer. *United States v. Smith*, 79 F.3d 1208, 1210 (D.C. Cir. 1996). Moreover, the government is not required to "spell out in precise detail how the government will prove its case at trial, nor specify exactly what sources it will use." *United States v. Martir*, 782 F.2d 1141, 1145 (2d Cir. 1986); s*ee also United States v. Williams*, 798 F. Supp. 34, 36 (D.D.C. 1992). A pretrial detention hearing should not be used as a discovery device and cross-examination should be limited to the disputed issues. *See Smith*, 79 F.3d at 1210, *see Williams*, 798 F. Supp. at 36.

## ARGUMENT

This Court should detain the defendant, Richardo Ellerbe, pending trial. A review of the § 3142(g) factors makes clear that no condition or combination of conditions will assure the safety of the community if the defendant were to be released.

I.      **Analysis of the § 3142(g) Factors**

      A.      **The Nature and Circumstances of this Offense Merit Detention.**

The first factor, the nature and circumstances of the offenses charged, weighs heavily in favor of detention. At the outset, the defendant, a felon, is never allowed to possess a firearm. He has neither a license to carry a firearm nor does he have a firearm registered in his name. Notably, the defendant was on supervised release for a prior unlawful possession of a firearm and assault

with intent to kill conviction in 2017-CF1-0559 at the time he was arrested for *this* gun offense.

In the instant case, the defendant was found unlawfully possessing a firearm in public, an act which, by itself, is inherently dangerous. *See United States v. Blackson,* No. 23-CR-25 (BAH), 2023 WL 1778194 at *13 (D.D.C. Feb. 6, 2023) (noting that "illegally possessing a fully loaded concealed firearm with easy, quick access in the front waistband of defendant's pants, while out in public, poses an inherent risk of danger to the community"). While the defendant's firearm was not loaded or used, the Court in *Blackson* nevertheless observed, "the absence of such evidence does little to detract from the existing facts about the condition of the firearm and its placement on defendant's person that support detention." 2023 WL 1778194 at *14.

The law recognizes the seriousness of this offense. The maximum term of imprisonment for unlawful possession of a firearm is "not more than 15 years." 18 U.S.C. § 924(a)(8). Yet, there are several aggravating factors accompanying the defendant's unlawful possession of a firearm in this case. The dangerous nature of his illegal possession of a firearm is exacerbated by the fact that the defendant possessed the firearm while driving a stolen vehicle which contained illegal drugs, a scale, and open containers of alcohol. The defendant's close proximity to this firearm while he was committing other unlawful acts highlights his reckless behavior. Furthermore, the inescapable reality is that the firearm was stored on the defendant's person, where he could easily and quickly access the firearm. This firearm rested on his body while he resisted arrest and engaged in a physical struggle with law enforcement that resulted in O.C. spray being used. Accordingly, this factor weighs heavily against the defendant.

### B.     The Weight of the Evidence Against the Defendant is Strong.

The second factor to be considered, the weight of the evidence, also weighs in favor of

detention.[3] The Government's case against the defendant is strong. His conduct is almost entirely caught on Body Worn Camera (BWC) and surveillance footage. The defendant can be seen wearing the gray satchel on his body as police officers approach and ask him to step out of the vehicle. That same satchel is on his person while he is physically pushing back against the police officers attempts to detain him. After handcuffing the defendant, officers opened the satchel and recovered a black and brown .22 caliber revolver. Law enforcement's recovery of the firearm, as well as the loose ignition, open containers of alcohol, white rock substance, and scale are all captured on BWC footage. The weight of the evidence against the defendant is strong, and merits pretrial detention.

### C. The Defendant's History and Characteristics Weigh in Favor of Detention.

#### 1. Criminal History

The third factor – the defendant's history and characteristics – weighs heavily in favor of detention. This Court considers, *inter alia*, "the defendant's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, [and] criminal history." *United States v. Taylor*, 289 F. Supp. 3d 55, 69 (D.D.C. 2018). In considering pretrial detention, this Court "may also consider prior arrests or charges brought against a defendant, even when those

---

[3] This Court should equally consider the weight of the evidence in its analysis of the § 3142(e) factors. In *Blackson*, following a thorough review of the text of § 3142 and decisions analyzing this factor, then Chief Judge Howell found that "the weight of the evidence should not automatically be weighed less than the remaining statutory pretrial detention factors." 2023 WL 1778194, at *8. Instead, "the weight of the evidence against [a] defendant [should] be weighed as all factors are—in accordance with the specific facts of this case—to determine whether pretrial detention is appropriate." *Id.* at *10. In an unpublished opinion, the D.C. Circuit affirmed Judge Howell's decision. *United States v. Blackson*, No. 23-3020, 2023 WL 2663034 (D.C. Cir. Mar. 28, 2023). The Second Circuit reached the same decision after a thorough and careful analysis of the issue. *United States v. Zhe Zhang*, 55 F.4th 141, 149-150 (2d Cir. 2022). This Court should follow *Blackson* and *Zhang;* this factor should be given no less weight than any other factor.

actions did not result in convictions." *See id*. at 70. The government harbors serious concerns about the defendant's suitability for adequate monitoring on release based on his history and characteristics. These concerns stem from the nature of the defendant's convictions as well as his performance while on court supervision. In total, the defendant has seven prior convictions and fifteen prior arrests as an adult. Four of those convictions are felonies, three of which involve the illegal possession of firearms.

The defendant's most recent conviction demonstrates his reckless intent and capacity for dangerous behavior. As mentioned above, in that case, 2017-CF1-0559, the defendant took out a firearm and shot at two innocent civilians without any provocation on August 6, 2016. While one of the individuals escaped unscathed, the other individual suffered eight gunshot wounds, including to his groin, buttocks, and thigh. The victim required multiple surgeries and months of recovery. There, the defendant used a Norinco, Model 213 9mm semi-automatic firearm. After the shooting, the defendant went into the back of an alley and abandoned his firearm behind a nearby home. When questioned by about the shooting, the defendant provided officers a false name and denied any involvement. Surveillance footage showed the defendant hiding the firearm after the shooting and his DNA profile was recovered from the abandoned firearm.

Facing a twelve-count indictment which included significant mandatory sentences of incarceration, the defendant pleaded guilty to one count of assault with intent to kill and one count of unlawful possession of a firearm (crime of violence) on December 15, 2017. As part of his guilty plea, the defendant admitted that he shot at both individuals intentionally, that he attempted to kill one individual, and that he did so without any legal justification. On February 15, 2018, the defendant was sentenced to 96 months of incarceration with 3 years of supervised release. The defendant escaped from the custody of the Bureau of Prisons (BOP) on October 27, 2023, and less

than five months later, is before this Court on a new charge.

Additionally, in 2009, the defendant was convicted of motor vehicle theft and unlawfully possessing a firearm in Prince George's County, M.D. In that case, CT090430X, the defendant was sentenced to 195 days of incarceration on April 30, 2010. That same year, the defendant was convicted of another handgun offense in Prince William County, V.A. In that case, CR09001547-48, the defendant was convicted of larceny and brandishing a firearm and sentenced to six months of incarceration with 150 months of suspended time and four years of supervised release on April 1, 2010. While on probation in that case, the defendant was convicted of petit larceny in Alexandria, V.A. In that case, GC11001554, the defendant was sentenced to two months of incarceration with four months of suspended time on April 27, 2011. On December 14, 2014, the defendant was arrested and charged with attempted robbery of a residence in Alexandria, V.A. In that case, CR15F00044-01, the defendant eventually pleaded guilty to stealing property and was sentenced to 11 months of incarceration with four years and one month of suspended time. In sum, the defendant has been convicted of offenses involving firearms four times prior to this offense.

2. **Noncompliance with Release Conditions**

The defendant's prior convictions display a refusal to abstain from unlawful behavior, specifically involving firearms. His conduct while on release in those cases is equally telling. He has demonstrated a clear inability to comply with the terms of his pretrial release and cannot be expected to do so here. The defendant's history and characteristics strongly favor detention.

While on pretrial release in CT0909439X, for a motor vehicle theft involving the use of a handgun in P.G. County, the defendant was rearrested in Prince William County for two separate theft-related offenses, one of which – CR09002548 – involved the defendant brandishing a firearm. Meaning, while on pretrial release for an offense involving the unlawful use of a handgun, the

defendant committed another crime involving the use of a handgun. When the defendant was sentenced in CT0909439X on April 30, 2010, he received the benefit of a partially suspended sentence and three years of supervised probation. Seven months later, the defendant admitted to a release violation which ultimately resulted in his probation being revoked and the defendant sentenced to another 20 months of incarceration.

In CR09002547-8, the defendant was convicted of larceny and brandishing a firearm. In pleading guilty, the defendant received the benefit of pleading down a robbery charge and serving a partially suspended sentence on April 1, 20210. While on probation in that case, the defendant committed a violation which resulted in his probation being revoked – he was re-sentenced to one year and six days of incarceration on December 5, 2013. One year later, the defendant was charged with the attempted robbery of a residence. The defendant pleaded guilty to a lesser charge of stealing property and received the benefit of a partially suspended sentence on March 19, 2015.

Just over one year after his sentence, on April 28, 2016, the defendant violated the terms of his probation. The defendant's probation was revoked, and he was resentenced to another term of incarceration. Four months later, the defendant was arrested and charged with assaulted with intent to kill while armed and unlawful possession of a firearm in 2017-CF1-0559. As mentioned previously, in 2017-CF1-0559, the defendant received the benefit of being released to a halfway house. The defendant escaped the halfway house before being arrested in the instant case. Given the defendant's inability to comply with the terms of his release, this factor weighs against the defendant.

        **D.**    **The Defendant Presents a Danger to Our Community.**

The fourth and final factor, the danger to any person or the community posed by the defendant's release, weights heavily in favor of detention. At the outset, "it cannot be gainsaid that

unlawful possession of a firearm that is unregistered and fully loaded, with an extended capacity magazine, carried in a position of easy, quick access poses a significant danger to other persons and the community." *Blackson*, 2023 WL 1778194 at *11. The District of Columbia is facing a crime epidemic largely fueled by unlawful gun possession, an inherently dangerous act. *See United States v. Gassaway*, No. 21-CF-550 (RCL), 2021 WL 4206616, at *3 (D.D.C. Sept. 16, 2021) (collecting cases in this district holding that unlawful firearm possession is dangerous to the public); *United States v. Howard*, No. 20-MJ-181 (BAH), 2020 WL 5642288, at *2–3 (D.D.C. Sept. 21, 2020) (same); *United States v. Cole*, 459 F. Supp. 3d 116, 120 (D.D.C. 2020) (noting that a loaded firearm "has the great potential to escalate into violence," particularly where, as here, a defendant's prior conviction shows a predilection for violence); *United States v. Washington*, 907 F. Supp. 476, 486 (D.D.C. 1995) ("[P]ossession by a felon of a fully loaded semi-automatic pistol suggests that the defendant presents an extreme safety risk to the public.").

While the defendant is not solely responsible for that epidemic, he is before the Court for unlawful possession of a firearm after three prior convictions involving firearms, and, most concerningly, a prior conviction for assault with intent to kill where he used one of those firearms to shoot at two innocent civilians. The defendant's conduct in this case, coupled with his criminal history, demonstrates that he cannot be trusted to comply with the Court's order while on release, and cannot refrain from unlawful conduct involving firearms while on release. The defendant's felony convictions illustrate an unwillingness to obey the nation's gun and drug laws and a willingness to use guns to inflict serious injury and death on others. His performance while on supervision for those convictions shows a refusal to comply with the Court's orders. The only measure that can protect community safety in this case is to detain the defendant pending trial. This factor weighs against the defendant.

**CONCLUSION**

Over the last fifteen years, the defendant has been associated with criminality on an ongoing basis. The defendant's conduct in this case, coupled with his criminal history demonstrates that he cannot be trusted to comply with the Court's order while on release, and cannot refrain from unlawful conduct involving drugs or firearms while on release. His most recent conviction shows that even in prison, the defendant cannot refrain from criminal conduct. Instead, the defendant's conduct continues to worsen. The only measure that can protect community safety in this case is to detain the defendant pending trial.

    Respectfully submitted,

    MATTHEW M. GRAVES
    UNITED STATES ATTORNEY
    D.C. Bar No. 481052

By:   */s/ Omeed A. Assefi*
    Omeed A. Assefi
    Assistant United States Attorney
    D.C. Bar No. 252705
    601 D Street, N.W.
    Washington, D.C. 20530
    (202) 803-1645
    Omeed.assefi3@usdoj.gov